UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROBERT DENTON, as personal
representative of the Estate of
Linda Denton,

        Plaintiff,

v.                              Case No. 3:09-cv-10036-WGY-JBT

R.J. REYNOLDS TOBACCO CO. and
PHILIP MORRIS USA, INC.,

        Defendants.

_____

<u>MEMORANDUM AND ORDER</u>

This cause comes before the Court on the plaintiff's motion

for a new trial filed September 5, 2012.  Pl.'s Mot. New Trial

("Mot."), ECF No. 212.  The plaintiff, Robert Denton ("Mr.

Denton"), as personal representative of the Estate of Linda

Denton, requests a new trial in this tobacco wrongful death case

based on an alleged inconsistency in the jury verdict.  In the

alternative, Mr. Denton argues that even if the verdict can be

read consistently, the verdict was against the great weight of

the evidence.  The defendants R.J. Reynolds Tobacco Company

("Reynolds") and Philip Morris USA, Inc. ("Philip Morris")

(collectively, "Defendants") respond that the verdict is

consistent and supported by the evidence, and that any

inconsistency was invited by Mr. Denton.  Upon review of the

parties' submissions, the relevant portions of the record, and

the applicable law, the Court rules as follows.

I.   **BACKGROUND**

In order to resolve the many issues presented here, some
background on this case and the federal "Engle progeny" cases is
necessary.   Mr. Denton brought this wrongful death lawsuit
against Reynolds and Philip Morris on behalf of his wife Linda's
("Mrs. Denton") estate and survivors.   Second Am. Compl., ECF
No. 22.   Mr. Denton claimed that his wife developed lung cancer
and died as a result of her addiction to cigarettes manufactured
by Reynolds and Philip Morris.   See Joint Pretrial Statement 1-
2, ECF No. 87.   Mr. Denton sought compensatory and punitive
damages on claims for strict liability, negligence, fraud by
concealment, and conspiracy to commit fraudulent concealment.[1]
Id. at 2.

This case is one of the thousands of "Engle progeny"
lawsuits for damages resulting from the injuries or deaths of
individual smokers allegedly caused by smoking cigarettes.   The
cases are called "Engle progeny cases" because they have their
genesis in the Florida Supreme Court's opinion in Engle v.
Liggett Group, Inc., 945 So. 2d 1246 (Fla. 2006).   In December
2006, the Florida Supreme Court decertified a class of smokers

---

[1] Mr. Denton also had initially filed breach of express
warranty and breach of implied warranty claims, but dismissed
those claims prior to trial.   Stipulation Dismissal Breach
Express & Implied Warranty Claims, ECF No. 103 (Dalton, J.).

and their representatives, but gave the members of the
decertified class one year in which to file individual lawsuits.[2]
Id. at 1277.  As a result, several thousand Engle progeny claims
were filed in or removed to this Court in late 2007 and early
2008.  Though initially filed as several multi-plaintiff cases,
on May 13, 2009, the Court severed the claims into thousands of
individual cases, May 13 Order, ECF No. 1-8, of which this case
is one.  The cases were stayed on October 29, 2010, and largely
remain stayed.  Oct. 29 Order, ECF No. 1-7.  On December 22,
2010, the Court lifted the stay on twelve cases, including this
case, and activated them for discovery and trial.  First Omnibus
Engle Order 1, In re: Engle Cases, 3:09-cv-10000-J-32JBT
("Master Docket"), ECF No. 42.

The Court eventually set this case for trial on July 23,
2012, with jury selection to begin the following day.  Order
Scheduling Trial, ECF No. 118; Minute Entry, ECF No. 154.  In
its order scheduling trial, the Court instructed the parties to
confer and file joint proposed jury instructions and verdict
forms based on a set used in a previous federal Engle progeny
trial and to note any additions, modifications, or objections.
Order Scheduling Trial ¶ 6.

---

[2] For a detailed history of the Engle litigation, see Brown
v. R.J. Reynolds Tobacco Co., 611 F.3d 1324, 1326-29 (11th Cir.
2010) and Waggoner v. R.J. Reynolds Tobacco Co., 835 F. Supp. 2d
1244 (M.D. Fla. 2011).

On July 10, 2012, the parties jointly submitted proposed jury instructions and a verdict form based on those used in Gollihue v. R.J. Reynolds Tobacco Co., 3:09-cv-10530-J-37JBT ("Gollihue Docket"), ECF No. 131, which had been tried in February 2012.  Joint Submission Phase I Jury Instructions & Verdict Form Pursuant Ct.'s June 7, 2012 Order Scheduling Trial ("Proposed Jury Instructions"), ECF No. 133.  As instructed, the parties objected only to proposed additions and modifications and did not object on grounds already decided in Gollihue or earlier federal Engle progeny cases, as the Court deemed those objections preserved.[3]  Proposed Jury Instructions 1-3.

The proposed verdict form included, after interrogatories on Mrs. Denton's strict liability, negligence, fraudulent concealment and conspiracy to commit fraudulent concealment claims, a special interrogatory that asked the jury to allocate fault between Mrs. Denton and any defendant against which it had found on any of Mr. Denton's claims.  Id. at 59-60. With the exception of name and number changes, the same interrogatory was used in Gollihue.  Compare id. with Phase I Verdict 3, Gollihue

---

[3] Though they joined in the submission, Defendants separately noted that they objected to using any instructions or verdict form other than those they submitted earlier as part of the Joint Pretrial Statement.  Proposed Jury Instructions 3-4; Defs.' Objections Regarding Joint Submission Phase I Jury Instructions & Verdict Form Required Ct.'s June 7, 2012 Order Scheduling Trial 2, ECF No. 136; see also Joint Pretrial Statement 31-38, ECF No. 87.

Docket, ECF No. 132.   Other than rejecting a change proposed by

Reynolds that is not relevant here, the Court adopted the

interrogatory without specific objection in this case.   Trial

Tr. vol. 6, 122, July 31, 2012 (morning), ECF No. 198; <u>see</u>

Verdict, ECF No. 187; Proposed Jury Instructions 60.   The

interrogatory in the final verdict form provided:

> **7.   State the percentage of any fault which was a legal
> cause of Mrs. Denton's death that you charge to:**

> Linda Denton                                  _____%

> Philip Morris USA Inc.                        _____%

> Reynolds Tobacco Company                      _____%

> **TOTAL MUST BE 100%**

> *If you did not charge any Defendant with any percentage of
> responsibility, you should not proceed further except to
> date and sign this verdict form and return it to the
> courtroom.   If you did charge one or both Defendants with
> some percentage of responsibility, please proceed to
> Question 8.*

Verdict 3, ECF No. 187.

Though this interrogatory came from <u>Gollihue</u>, it was not

the result of a joint submission in that case.   The parties

there submitted a joint pretrial statement that included

different verdict forms from plaintiff and defendants, including

different versions of a special interrogatory on fault

allocation.   Joint Submission Proposed Jury Instructions &

Verdict Form ("Joint Proposed Instructions"), <u>Gollihue</u> Docket,

ECF No. 96-12.   The plaintiff submitted a fault allocation

interrogatory that did not include any "stop instruction" after it.  Id. at 332.  The fault allocation interrogatory defendants proposed contained different language, including a stop instruction identical to the one eventually adopted.  Id. at 341.  The defendants argued that the stop instruction was essential.  Id. at 336.  Other than proposing an alternative interrogatory, however, the plaintiff in Gollihue did not specifically object to the inclusion of a stop instruction in this interrogatory.

After those submissions, the court in Gollihue fashioned proposed jury instructions and a verdict form and held a charge conference to hear argument.  Trial Tr. vol. 8, 4-79, Feb. 16, 2012 (morning), Gollihue Docket, ECF No. 149.  Neither side objected to the fault allocation interrogatory proposed by the court.  A version of the interrogatory that included the stop instruction was ultimately given to the jury in Gollihue, Verdict, Gollihue Docket, ECF No. 132, and served as the basis for the interrogatory used here.

Jury selection began in the case at bar on July 24, 2012.  Minute Entry, ECF No. 160.  Trial continued for the next five court days.  On July 31, 2012, the Court heard argument and settled on the final instructions and verdict form to be given to the jury during a charge conference with the parties.  Trial Tr. vol. 6, 4-59, 114-124, July 31, 2012 (morning), ECF No. 198.

The Court and the parties addressed a number of issues at that time, but there was no objection to the fault allocation interrogatory proposed by the Court. Id. at 122. Later that afternoon, the Defendants rested. Trial Tr. vol. 6, 264, July 31, 2012 (afternoon), ECF No. 199. Closing arguments began the morning of the next day. Trial Tr. vol. 7, 13, Aug. 1, 2012, ECF No. 200.

Mrs. Denton's responsibility was argued during each party's closing arguments. In addressing this issue during his closing argument, counsel for Philip Morris argued to the jury that if they found that defendant's negligence, strict liability, or concealment was a legal cause of Mrs. Denton's death, they should still allocate all of the fault for her death to her: "And based on [Mr. Denton's] admission [of responsibility], if you get this far, I respectfully suggest, members of the jury, that with Linda Denton, you put 100 percent because plaintiff is telling you that she knew the risks, and she had the ability to quit." Id. at 94. Mr. Denton did not object to this argument.

On August 1, 2012, after closing arguments were finished, the Court instructed the jury as to the law and the verdict form in accordance with the final instructions developed at the charge conference. Trial Tr. vol. 7, 121-50, Aug. 1, 2012, ECF No. 200. The jury began its deliberations at 12:41 p.m. Id. at 151. After nearly five hours of deliberations, at approximately

5:39 p.m., the jurors sent a note to the Court asking for permission to make child care arrangements and notify their families that they would be staying later than expected.  Id. at 155.  The note also advised that they had reached a verdict. Id.  At 5:49 p.m., the jury returned its verdict.  Id. at 159-60.

The verdict found that Mrs. Denton had been addicted to cigarettes containing nicotine and that her addiction was a legal cause of her death.  Verdict ¶¶ 1-2.  The verdict found that neither Reynolds's nor Philip Morris's negligence, fraudulent concealment, or conspiracy to commit fraudulent concealment was a legal cause of decedent's death, but that each company's placement of defective and unreasonably dangerous cigarettes on the market was a legal cause of her death.  Id. ¶¶ 3-6.  Then, in answering the special interrogatory on fault allocation set forth above, the jury charged 100% of the fault for her death to Mrs. Denton.  Id. ¶ 7. Apparently following the stop instruction, the jury did not continue on to determine damages.  See id. ¶ 8.

After publishing the verdict and polling the jury, the Court asked the parties at sidebar whether they had any issues or objections to raise regarding the verdict.  Trial Tr. vol. 7, 160-63.  Mr. Denton's counsel then raised the possibility that the verdict was inconsistent and that the jury should be

instructed to reconsider, or that the Court should conduct a
second trial on damages and comparative fault.  Id. at 164-66.
The Court heard argument on the issue from both sides, including
an argument from Mr. Denton that the jury should be instructed
to continue to a determination of damages, which the Court would
then reduce by 100%.  Id. at 171-72.  The Court overruled that
objection, noting that the not-objected-to stop instruction in
the special interrogatory rejected that proposition.  Id. at
172.  The Court declined to express an opinion at that time as
to whether the verdict was inconsistent, but also declined to
instruct the jury to keep deliberating.  See id. at 170-71.
Finding that the verdict could be read consistently, the Court
accepted the verdict and discharged the jury.  Id. at 170-74.

On August 8, 2012, the Court entered judgment in favor of
Reynolds and Philip Morris and against Mr. Denton.  J. Civil
Case, ECF No. 205.  On September 5, 2012, twenty-eight days
after judgment was entered, Mr. Denton timely filed the instant
motion.  Mot.  Defendants filed a joint opposition on September
24, 2012.  Defs.' Opp'n Pl.'s Mot. New Trial ("Opp'n"), ECF No.
217.  With the Court's permission, Mr. Denton filed a response
to the opposition on November 14, 2012.  Pl.'s Resp. Defs.'
Opp'n Pl.'s Mot. New Trial ("Resp."), ECF No. 223.

Mr. Denton's motion argues that a new trial is warranted
because the verdict was inconsistent, the result of an improper

compromise, and against the great weight of the evidence. Mot. 1-2. In his view, the jury's verdict is inconsistent in finding both that the placement of defective and unreasonably dangerous cigarettes on the market by Reynolds and Philip Morris was a legal cause of his wife death and that her fault was 100% of the cause of her death. Mot. 4-7. In a related argument, Mr. Denton claims that the allegedly inconsistent verdict was the result of an improper compromise by the jury. Id. at 8-9. Finally, Mr. Denton argues that the weight of the evidence did not support the jury's finding that Mrs. Denton was 100% of the cause of her death. Id. at 9-15.

Defendants' opposition disagrees with each of Mr. Denton's arguments and additionally argues that if the verdict is inconsistent, Mr. Denton invited the inconsistency. Opp'n. 1-2. In his response to the opposition, Mr. Denton argues that Defendants misinterpret Florida law and that he never invited the inconsistency he identifies. Resp. 1.

## II. ANALYSIS

### A. The Verdict Is Consistent with the Case Presented to the Jury

Pursuant to Federal Rule of Civil Procedure 59(a), a court may "grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."

Fed. R. Civ. P. 59(a)(1)(A).  An inconsistent verdict may be grounds for new trial.  See Fed. R. Civ. P. 49(b)(3); Wilbur v. Correctional Servs. Corp., 393 F.3d 1192, 1199 (11th Cir. 2004).  Although the Eleventh Circuit has not spoken on the issue, the Sixth Circuit has held that in diversity cases, federal law supplies the procedure for addressing an inconsistent verdict and state law determines whether the verdict is inconsistent.  Conte v. General Housewares Corp., 215 F.3d 628, 639 (6th Cir. 2000); Tipton v. Michelin Tire Co., 101 F.3d 1145, 1148 n.4 (6th Cir. 1996).

     In considering an alleged inconsistency, "a court must attempt to reconcile a jury's apparently inconsistent answers to special interrogatories."  Royal Cup, Inc. v. Jenkins Coffee Serv., Inc., 898 F.2d 1514, 1519 (11th Cir. 1990).  In fact, "[w]here there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way."  Technical Res. Servs., Inc. v. Dornier Med. Sys., Inc., 134 F.3d 1458, 1464 (11th Cir. 1998) (internal quotation marks omitted) (quoting Gallick v. Baltimore & Ohio R.R., 372 U.S. 108, 119 (1963)).  "The test for resolving apparent inconsistencies 'is whether the answers may fairly be said to represent a logical and probable decision on the relevant issues as submitted.'"  Royal Cup, Inc., 898 F.2d at 1519 (quoting Griffin v. Matherne, 471 F.2d 911, 915 (5th Cir.

1973)).  Under Florida law, "[f]indings are not inconsistent if they show that the jury had only one intent."  Southland Corp. v. Crane, 699 So. 2d 332, 334 (Fla. 5th DCA 1997).

After a review of the parties' submissions, the record in this case, and the applicable law, the Court rules that the jury's verdict here is not inconsistent.  The verdict is consistent because it fits with how the jury was directed to complete the verdict form, how the jury was instructed in the law, the way the parties presented the case to the jury, and, in fact, how Mr. Denton here, and how the plaintiff in Gollihue, urged that the jury must consider and decide the case.  It is also consistent with the underlying case law.  The Eleventh Circuit has instructed courts to look to the entire record in the case – the "pleadings, evidence, arguments, jury instructions," and the verdict itself – to determine whether a verdict is inconsistent.  Royal Cup, Inc., 898 F.2d at 1521.  In this case, the record reflects that the jury did what it was instructed to do and returned a consistent verdict.

### 1.   The Verdict Form

The verdict in this case was internally consistent as per the verdict form's structure.  In Gollihue, the defendants proposed, and the plaintiff agreed, that a stop instruction be placed on the verdict form after the jury's findings on the plaintiff's individual claims and before the fault allocation

interrogatory.  Trial Tr. vol. 8, 76-79, Feb. 16, 2012 (morning), <u>Gollihue</u> Docket.  The same stop instruction was retained in this case.  Verdict 2.  The effect of this stop instruction is that the jury could never reach the question of allocating fault to Mrs. Denton unless it first had determined that either Reynolds or Philip Morris or both were liable on one or more of Mr. Denton's claims.  <u>Id.</u> ("If you answered 'NO' to Questions 3, 4, 5, and 6 for all Defendants, then your verdict is for the Defendants and you should not proceed further except to sign, date, and return this form."))  Thus, as the verdict form was structured, the jury had to find that a defendant was a legal cause of Mrs. Denton's death before it could turn to the issue of her comparative fault.  Then, after considering her fault together with the Defendants' fault, another stop instruction directed the jury that it "should not proceed further" if it "did not charge <u>any</u> Defendant with any percentage of responsibility . . . ."  <u>Id.</u> at 3 (emphasis added).  Neither Mr. Denton nor the plaintiff in <u>Gollihue</u> objected to this stop instruction.  The jury here did not charge any defendant with any percentage of responsibility in the fault allocation interrogatory, so the jury obeyed the stop instruction and proceeded no further.  <u>Id.</u>  The jury's verdict is consistent with, and indeed contemplated by, the language of the verdict form.

**2.    The Jury Instructions**

The verdict is also consistent with the way the Court instructed the jury.  Instruction Number 17 of the Court's final jury instructions addresses Mrs. Denton's comparative negligence.  Ct.'s Instructions Jury 25, ECF No. 186.  The first sentence of Instruction Number 17 states that "[i]f your verdict is for the plaintiff on one or more claims against the defendants, you must <u>then</u> consider the extent to which Mrs. Denton's conduct was a legal cause of her death."  <u>Id.</u> (emphasis added).  A reasonable reading of this sentence is that the jury should consider her fault only <u>after</u> finding against a defendant.

Turning back to the verdict form with Instruction No. 17 in mind, it is reasonable to conclude that, in finding Mrs. Denton 100% at fault, the jury factored in her fault where it was instructed to do so.  It is not inconsistent with the structure of the jury instructions for the jury to find Reynolds and Philip Morris to have been legal causes of Mrs. Denton's death, and then to allocate to her all of the fault for her death.  The jury was instructed to consider her fault only after first finding that the defendants were a legal cause.  Thus, the jury's verdict is consistent with the jury instructions, as well.

**3.    The Parties' Presentations**

14

This structure – considering Defendants' liability first, then Mrs. Denton's fault – is exactly how the plaintiff urged the Court to frame the jury's deliberations when the instructions and verdict form used here were first developed in Gollihue.  In Gollihue, the plaintiff argued that one of defendants' proposed instructions touching on comparative negligence "erroneously injects the issue of comparative fault into the question of Defendants' liability on Plaintiff's claims."  Joint Proposed Instructions 82, Gollihue Docket. According to the Gollihue plaintiff, the proper order of issues to be determined is that "[t]he affirmative defense of comparative fault is relevant only if Defendants are found liable on Plaintiff's claims."  Id.  Such a presentation thus assumes that liability and fault are independent considerations.

For their part, Defendants here presented a case to the jury for assessing 100% of the fault for decedent's death to the decedent, even if it found against a defendant on liability. Trial Tr. vol. 7, 94.  Mr. Denton did not object.  In its verdict, the jury did as Defendants suggested.[4]

---

[4] To some extent, the parties have switched sides on this issue.  In his response to Defendants' motion for partial summary judgment on decedent's responsibility, Mr. Denton argued that the jury should be allowed to allocate no fault to Mrs. Denton even though he admits that she was a partial legal cause of her death.  Pl's. Omnibus Resp. Opp'n Defs.' Mots. Partial Summ. J. Existence Engle Disease Victim's Responsibility 3-4, ECF No. 37.  Defendants countered that the jury had to allocate

Even were the verdict defective in form, it is not inconsistent because the Court can reconcile the verdict and give effect to the jury's manifest intention.  See Royal Cup, Inc., 898 F.2d at 1522.  Here, given the jury's explicit statement that Mrs. Denton bore all of the fault which was a legal cause of her death, it is reasonable to believe that the jury intended to render a defense verdict, finding that Mrs. Denton should bear full responsibility here.  Thus, no new trial is warranted.

### 4.  Comparative Fault Legal Framework

Mr. Denton argues that a finding of legal cause or liability without an associated finding of fault is inconsistent.  This proposition, however, finds limited support in the case law – both within and beyond Florida – which distinguishes between liability, on one hand, and fault, on the other.  A finding of liability for a tort is independent from a finding of fault, and while the former may be a necessary prerequisite for the latter, the latter does not inevitably follow from the former, even in a comparative fault jurisdiction.  See, e.g., Waggoner v. R.J. Reynolds Tobacco Col,

---

some fault to the decedent.  Defs.' Reply Mem. Law Supp. Their Mot. Partial Summ. J. Existence Decedent Linda Denton's Responsibility 3, ECF No. 42  The distinction between allocating 100% fault to Mrs. Denton and allocating 100% fault to the Defendants is a critical one, but the relative change of positions is worth noting.

835 F. Supp. 2d. 1244, 1274 (M.D. Fla. 2011) (Corrigan, D.J.)
("Assuming the jury finds Defendants liable, it might still
return a zero award on the basis of [plaintiff's] comparative
fault."); Dunn v. Consolidated Rail Corp., 890 F. Supp. 1262,
1276 (M.D. La. 1995) ("[T]he questions on liability and
comparative fault are separate and distinct inquiries."); see
also Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998)
("[I]f damages could reasonably have been mitigated no award
against a liable employer should reward a plaintiff for what her
own efforts could have avoided."); Venzia v. Bentley Motors,
Inc., 374 Fed. Appx. 765, 768 (9th Cir. 2010) ("Nor is a finding
of liability accompanied by no award of damages necessarily
inconsistent."); Lewis v. Parish of Terrebonne, 894 F.2d 142,
148 (5th Cir. 1990) (finding liability but imposing zero
compensatory damages); cf. Restatement (Second) of Torts § 281
Statements of the Elements of a Cause of Action for Negligence
(stating that the question of whether the "actor's conduct is a
legal cause of the invasion" and "the other has not so conducted
himself as to disable himself from being an action for such
invasion" are distinct and independent elements of the
negligence action).  Thus, under this framework, it is not
legally inconsistent for the Defendants' actions to have been a
legal cause of Mrs. Denton's death, but for them to bear none of
the comparative fault for the death.

17

Denton relies heavily on Southland, 699 So. 2d. 332, arguing that it provides "clear controlling Florida law" that is directly on point to the issue presented here.  Resp. 1. Southland's jury instructions are, however, distinguishable from those in the case at bar.  In Southland, the jury instructions asked first if there was "negligence on the part of the defendant . . . which was the legal cause of damage to [the] plaintiff," and then gave the converse instruction, asking whether there was "negligence on the part of [the] plaintiff . . . which was a legal cause of her damage."  Southland, 699 So. 2d at 333.  Finally, it required the jury to "[s]tate the percentage of any negligence which was a legal cause of damage to plaintiff . . . that you charge to [defendant and plaintiff]."  Id.  The jury found that both the plaintiff and the defendant were negligent, and that such negligence was a legal cause of the damage, but then stated that all the negligence was charged to the defendant.  Id.  The court, in a short opinion without any additional explanation, ruled that "the verdict is clearly contradictory in that the jury found negligence on the part of the plaintiff which was a legal cause of her damage but then proceeded to apportion all of the negligence to the defendant."  Id. at 334.

Critically for these purposes, all three of these questions focused on allocating negligence, and it would, indeed, be

logically and legally inconsistent to say that both parties had committed negligent acts which were a legal cause of the damage, but that all of the negligence was to be charged to one party. Said differently, if a jury found that negligence was to be found on both sides of the "v.," it could not then, in the next breath, say that it was actually only found on one side. Similarly, in this case, the first two questions, as in Southland, allocated legal cause to both Mrs. Denton and the Defendants.  Verdict 1-2.  The third question, however, asked the jury to allocate fault.  Id. at 3.  As mentioned above, fault and causation for negligence are distinct and independent elements, and thus it would not be legally inconsistent for the jury to find the defendant a legal cause of the Mrs. Denton's death, and yet bear no fault for the death.

In a supplement filed after briefing on this motion was complete, Mr. Denton argues that the Florida Supreme Court opinion in Philip Morris USA, Inc. v. Douglas, 110 So. 3d 419 (Fla. 2013), cert. denied, 2013 WL 4079332 (Oct. 7, 2013), supports the conclusion that the verdict is inconsistent here. Supp. Mot. New Trial ("New Trial Supp."), ECF No. 224.  The court in Douglas held that a jury's finding that a decedent's addiction to smoking the defendant's cigarettes was a legal cause of the injuries alleged, coupled with the Engle findings on negligence and strict liability, sufficiently establishes

legal causation for the strict liability and negligence claims in an <u>Engle</u> progeny case.  <u>Douglas</u>, 110 So. 3d. at 430. According to Mr. Denton, this holding supports the argument that the jury's finding of strict liability initially foreclosed its ability later to allocate 100% fault to Mrs. Denton.[5]  New Trial Supp. 2.

   <u>Douglas</u> is not helpful here.  First, the court in <u>Douglas</u> was not presented with, and did not address, the issue of the potential inconsistency of an <u>Engle</u> progeny verdict -- both finding the defendant's conduct to be a legal cause of the decedent's death and allocating 100% fault to the decedent.

   Second, applying the principles of <u>Douglas</u> to this case does not change the analysis.  The jury here made an initial finding of strict liability causation.  The fact that the jury reached that conclusion by answering a special interrogatory on strict liability, rather than in the manner outlined in <u>Douglas</u>, 110 So. 3d at 430 (finding <u>Engle</u> class membership and addiction-causation), does not change the inconsistency analysis.  The Court must still determine the effect of the jury's comparative

_____

[5] Mr. Denton also argues that the verdict is improper under <u>Douglas</u> because the jury did not find in his favor on his negligence claim.  New Trial Supp. 1.  Assuming <u>arguendo</u> that this is error, in addition to being invited by Mr. Denton's proposed jury instructions and verdict form, Proposed Jury Instructions 42, 59; <u>see</u> Proposed Jury Instructions 90, 330, <u>Gollihue</u> Docket, the outcome would still be the same here because the 100% fault allocation to Mrs. Denton would still nullify an initial finding on negligence.

fault allocation on that initial finding.

The Court does not agree, however, with the Defendants'
argument that the verdict is consistent because the verdict form
asked the jury to allocate "fault," and strict liability is not
based on fault.  A detailed analysis of Florida law on strict
liability is unnecessary.  Instead, Florida law is clear that
comparative negligence does apply in strict product liability
cases.  Fla. Stat. § 768.81(1)(c); see West v. Caterpillar
Tractor Co., 336 So. 2d 80, 92 (Fla. 1976).  Moreover, the
statutory provision dealing with comparative negligence is
entitled "Comparative Fault."  Fla. Stat. § 768.81.  Further,
the statute refers to the "contributory fault chargeable to the
claimant" and instructs courts to "enter judgment against each
party liable on the basis of such party's percentage of fault."
Fla Stat. § 768.81(2), (3) (emphasis added).  Thus, the fact
that the verdict form here used the word "fault," and not a word
like "responsibility," is irrelevant to an evaluation of the
inconsistency of the verdict.[6]

Finally, this decision aligns with others reached by Engle-

_____

[6] The stop instruction following the fault allocation
interrogatory does use "responsibility," indicating that the
words should be interpreted similarly in this context.  Using
"responsibility" throughout this interrogatory may resolve any
confusion in future cases.  See Fla. Std. Jury Instruction
(Civil) (2012) Note on Use for 401.22f ("In strict liability
cases, the term 'responsibility' may be the most appropriate
descriptive term.").

progeny courts, and thus accords with this Court's mandate to promote the development, as much as is possible, of a consistent law of the Engle-progeny case.  According to the Temporary Special Master's report, prior to this verdict, at least one other jury in an Engle progeny case had reached a similar verdict.  See Report Temporary Special Master Case Mgm.t Engle-Progeny Cases, Sample Engle Progeny Case Verdict Form, Master Docket, ECF No. 147-7.  In Rohr v. R.J. Reynolds Tobacco Co., No. 07-34472 (Fla. Cir. Ct. 2010), the jury found against the plaintiff on negligence and against each defendant on strict liability, but allocated 100% of the responsibility to the decedent.  Id.  Neither side mentions Rohr in their briefs here, and the Court's own research suggests that the alleged inconsistency of the verdict was not raised in Rohr.  Even had it been, a Florida state trial court's ruling would not be binding here.  Rohr nevertheless indicates that a verdict like the one reached here is not entirely unheard of in Engle progeny cases.[7]

     For the reasons set forth above, the Court rules that the

---

     [7]  In the most recent group of federal Engle progeny trial, another jury also allocated 100% fault to the decedent after finding that smoking the defendants' cigarettes was a legal cause of the decedent's death.  Fazekas v. R.J. Reynolds Tobacco Co., 3:09-cv-13697-BRD-JBT, ECF No. 251.  Neither side raised the issue of alleged inconsistency, and the Court entered judgment for the defendants in that case.  J. Civil Case, Fazekas, ECF No. 252.

verdict can reasonably be read to be consistent, that judgment was properly entered in favor of Defendants and against Mr. Denton, and that Mr. Denton is not entitled to a new trial on the grounds of alleged verdict inconsistency.

### 5. Mr. Denton Invited Any Arguable Inconsistency in the Verdict

Because Mr. Denton raised the issue of the verdict's alleged inconsistency prior to the discharge of the jury, his objection on that issue is before the Court. Objections to the inconsistency of a verdict must be made before the jury is discharged. Golub v. J.W. Gant & Assocs., 863 F.2d 1516, 1520 n.4 (11th Cir. 1989).

For many of the same reasons that the Court rules the verdict consistent, however, the Court also rules that Mr. Denton invited any arguable inconsistency. The verdict here resulted from the way the case was presented to the jury, including in the parties' closing arguments, and how the jury instructions and verdict form framed the liability and comparative negligence analysis. Mr. Denton did not object to framing the case in this manner and, with the jury instructions, actively encouraged it. See United States v. Pertil, 344 Fed. Appx. 569, 571 (11th Cir. 2009) ("A party who indicated in the district court that the instruction was acceptable to him waives the right to challenge the accepted instruction on appeal.");

United States v. Hansen, 262 F.3d 1217, 1248 (11th Cir. 2001)
("[W]e will generally not review an error induced or invited by
a party through submission of an incorrect jury instruction to
the judge which was passed on to the jury."). Thus, the Court
rules any error in the verdict was functionally waived.

As discussed above, the verdict form and jury instructions
allowed the jury to return the verdict that it did. Any
potential inconsistency was not the result of an error or
failure on the part of the jury that might have been resolved by
further deliberation or additional instructions.[8] Thus, although
Mr. Denton understandably attempts to frame his motion as an
objection to the verdict and not the verdict form or jury
instructions, see Mot. 6, an objection to form only after the
jury returns a verdict is insufficient to preserve an issue.
Landsman Packing Co. v. Continental Can Co., 864 F.2d 721, 726
(11th Cir. 1989) ("[A]n objection to jury instructions [must] be
stated distinctly after the charge and before the jury
retires.") (citing Fed. R. Civ. Proc. 51); Golub, 863 F.2d at
1521 ("Objections to the form of interrogatories in a special
verdict must be raised before the jury is charged."). Mr.
Denton argued in favor of structuring the instructions and

---

[8] As it stated before discharging the jury, this Court
cannot conceive of any instruction it might have given to the
jury that could have corrected the supposed inconsistency
without improperly influencing the outcome. Trial Tr. vol. 7,
167, 171.

verdict form in such a way that would allow the supposed
inconsistency in the verdict.  Then, when counsel for Philip
Morris argued that the jury should, following that structure,
allocate 100% fault to Mrs. Denton even if it found against a
defendant on legal causation, Mr. Denton did not object.  Mr.
Denton invited the supposed error he identifies here and has
lost the right to raise it now.

        The Court is not persuaded by Mr. Denton's argument that he
had no obligation to object to Philip Morris's closing argument.
It is a common trial strategy (one Mr. Denton's counsel
employed, as well) to review the jury instructions and verdict
form in closing argument.  Although the Court ultimately
instructs the jury on the law, the Court does not agree that a
party has no obligation to object to errors in an opposing
party's closing argument.  See Haygood v. Auto-Owners Ins. Co.,
995 F.2d 1512, 1517 (11th Cir. 1993); see also Gora v. Costa,
971 F.2d 1325, 1332 (7th Cir. 1992) ("If the plaintiffs felt
that defense counsel's closing argument suggested an improper
[element], then it was the plaintiffs' obligation to object in
order to preserve this issue for appeal.").  If Mr. Denton
believed then, as he does now, that Philip Morris's argument
misstated the law, he should have objected.  His failure to do

so is an additional ground for waiver.[9]

**B.   There Is No Indication the Verdict Is an Improper Compromise Verdict**

As an alternative ground for a new trial, Mr. Denton argues that the jury rushed to reach an improper "compromise" verdict in order to end deliberations early and get home.  The Court disagrees.  The verdict does not qualify as a compromise verdict, and the evidence does not suggest that the jury acted inappropriately.

A new trial may be granted where the jury has rendered an improper "compromise verdict."  Burger King Corp. v. Mason, 710 F.2d 1480, 1486-87 (11th Cir. 1983).  "A compromise verdict results when jurors resolve their inability to make a determination with any certainty or unanimity on the issue of liability by finding inadequate damages."  Mekdeci ex. rel. Mekdeci v. Merrell Nat'l Labs., 711 F.2d 1510, 1513 (11th Cir. 1983); see Burger King Corp., 710 F.2d at 1486-87.  In considering whether a verdict was the result of an improper compromise, courts do not look solely to the allegedly inadequate damages, but to the totality of the circumstances, including "any indicia of compromise apparent from the record and other factors which may have caused the jury to return a

_____

[9]  Because it rules the verdict consistent, the Court need not reach Mr. Denton's argument that the plain error exception allows the Court to order a new trial even though he did not preserve the issue.

verdict for inadequate damages." Burger King Corp., 710 F.2d at 1487 (citations omitted).

Mr. Denton's claim that the verdict here was a compromise rests largely on the alleged inconsistency discussed earlier. According to him, the jury effectively compromised on liability by finding Defendants to be legal causes of decedent's death, then allocating 100% fault to his wife. Mot. 8.   The Court rules, however, that the jury followed the jury instructions and the directions on the verdict form and assessed Mrs. Denton's fault where it was told to do so.   Thus, to the extent the compromise verdict concept might apply here (and it is not clear from the cases Mr. Denton cites that it does), the Court finds no adequate indicia that the verdict was a compromise.

Further, the facts do not indicate that the jury acted inappropriately.  Mr. Denton believes that the jury's note about making arrangements to stay late is an indication that the jury rushed to its verdict and concluded deliberations prematurely. Id. at 9.  A more reasonable view, though, is that the conscientious jurors wanted to make sure their families were taken care of so that the jurors would have the time to see their service through to the end.  The jury had already deliberated for nearly five hours.  There was never any indication of juror dissension, deadlock, or that the jurors were struggling to understand the law or their obligations.

See Mekdeci ex. rel. Mekdeci, 711 F.2d at 1515.  The facts of
this case are markedly distinguishable from those cases Mr.
Denton cites where a new trial was ordered due to an improper
verdict.  See Lucas v. American Mfg. Co., 630 F.2d 291, 293 (5th
Cir. 1980) (trial judge warned the jury to hurry its
deliberations before the impending arrival of a hurricane);
Hatfield v. Seaboard Air Line R.R. Co., 396 F.2d 721, 723 (5th
Cir. 1968) (finding evidence that the verdict, which neither
side accepted, was result of jury confusion).  Instead, the
jury's note actually indicates the jury was able to reach a
verdict and wanted to be able to present it.  There is no reason
to believe the verdict was an improper compromise.

   **C.   The Verdict Is Not Against the Great Weight of the
        Evidence**

   Finally, a court may grant a motion for a new trial if the
jury's verdict was contrary to the great weight of the evidence.
Williams v. City of Valdosta, 689 F.2d 964, 973 (11th Cir.
1982).  The trial judge should independently weigh the evidence,
and must view the evidence favoring the jury verdict, as well as
the evidence favoring the moving party.  Id. (citing Rabun v.
Kimberly Clark Corp., 678 F.2d 1053, 1060 (11th Cir. 1982)).
But the "trial judge should not substitute his own credibility
choices and inferences for the reasonable credibility choices
and inferences made by the jury."  Id. at 973 n.7 (explaining

that a trial court "should not set the verdict aside as against

the weight of the evidence merely because, if he had acted as

trier of the fact, he would have reached a different result; and

in that sense he does not act as a 13th juror in approving or

disapproving the verdict." (quoting 10-59 Moore's Federal

Practice - Civil § 59.08[5])).   The court also has discretion to

grant a motion for a new trial if it finds "that the damages are

excessive, or that, for other reasons, the trial was not fair to

the party moving; and may raise questions of law arising out of

alleged substantial errors in admission or rejection of evidence

or instructions to the jury."   Montgomery Ward & Co. v. Duncan,

311 U.S. 243, 251 (1940).

Upon an independent review of the entire record, this Court

rules that a new trial is not warranted based on Mr. Denton's

third, and final, argument. The jury heard sufficient evidence

of Mrs. Denton's fault to support a finding that she should bear

full responsibility for her death.

In his motion Mr. Denton cites trial testimony regarding

his wife's addiction to nicotine.   Mot. 11-12.   This testimony

is not helpful in considering whether a new trial ought be

granted here because the jury did find that the Mrs. Denton was

addicted and that her addiction was a legal cause of her death.

See Verdict 1.   Mr. Denton certainly does not object to those

findings.

Similarly, testimony from Dr. Burns and Dr. Cummings regarding Defendants' knowledge and conduct is not particularly helpful because, at this stage and in this context, Defendants do not dispute in their opposition that there is at least some support for the jury's finding against them on the issue of strict liability.  See Opp'n 16-19.

The parties stipulated that lung cancer was the medical cause of Mrs. Denton's death ,see Ct.'s Instrs. Jury 11, and Defendants did not dispute that smoking causes the type of lung cancer that led to Mrs. Denton's death.  Trial Tr. vol. 1, 233, July 24, 2012 (afternoon), ECF No. 189.  As discussed above, however, it is not inconsistent in the context of this case for the jury to find against Defendants on strict liability but to assess 100% of the fault against Mrs. Denton.  Thus, the issue for the Court to decide here is whether the jury's finding of 100% fault against her is against the great weight of evidence. It is not.

The jury was presented with evidence, including testimony from Mr. Denton, to support a conclusion that early in her smoking history his wife was aware of the health risks associated with smoking, and began or continued smoking in spite of these risks.  For instance, there was evidence of the history of smoking and smoking-related illnesses in her family, including her father's death from lung cancer in 1971, her

30

brother's death from small cell lung cancer in 1980, and her mother's death of small cell lung cancer in 1982.   Trial Tr. vol. 5, 155-158, 163-65, July 30, 2012 (afternoon), ECF No. 197. The Defendants were successful in winning concessions from Plaintiff's expert Dr. Burns regarding Mrs. Denton's relative ease of quitting smoking and low likelihood of developing cancer had she quit smoking earlier in her smoking history.   Trial Tr. vol. 3, 74-76, 104, July 26, 2012 (morning), ECF No. 192.

Based on the record, the great weight of the evidence is not against a finding that, in essence, Mrs. Denton had been addicted to nicotine, that her addiction to cigarettes containing nicotine caused her death, that Defendants' defective and unreasonably dangerous cigarettes also physically caused her death, but that Mrs. Denton knew the risks associated with smoking, assumed those risks, continued to smoke anyway, and that she ought therefore bear ultimate responsibility for the consequences.

**III.  CONCLUSION**

Upon consideration, and after a thorough review of the record in this case, including the evidence submitted at trial, the Court concludes that there was sufficient evidence to support the jury's verdict.   The verdict is not inconsistent or improper and the verdict was not the result of an improper compromise, nor was it against the great weight of the evidence

31

or contrary to law.  The verdict does not result in a miscarriage of justice.  The jury in this case was entitled to consider Mrs. Denton's comparative negligence and determine, based on its own sifting of the evidence, that Mrs. Denton was 100% at fault for her lung cancer and death.

Accordingly, it is hereby **ORDERED:**

Plaintiff's Motion for New Trial, ECF No. 212, is **DENIED**.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG[10]
DISTRICT JUDGE

Copies to:

Counsel of Record

---

[10] Of the District of Massachusetts, sitting by designation.